## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JANE DOE, )<br><br>              Plaintiff,       )<br><br>      v.                       )<br><br>DEPUTY DIRECTOR DEBBIE )<br>DENNING, MARY SIGLER, Warden of )<br>Dwight Correctional Center, ASSISTANT )<br>WARDEN DORETTA O'BRIEN, )<br>ASSISTANT WARDEN PAMELA )<br>HARRIS, LIEUTENANT DEBBIE )<br>WINTERS, LIEUTENANT LUSTER, )<br>CORRECTIONAL OFFICER JAMES )<br>CAPETILLO, CORRECTIONAL )<br>OFFICER DONALD KINSELLA, JR., )<br>CORRECTIONAL OFFICER MICHAEL )<br>STROWMATT, CORRECTIONAL )<br>OFFICER JAMES DEMATTIA, )<br>CORRECTIONAL OFFICER ANDREW )<br>GROVE, CORRECTIONAL OFFICER )<br>BRUCE HAIGE, CORRECTIONAL )<br>OFFICER PETER MONAHAN, and )<br>CORRECTIONAL OFFICER LYNN )<br>HODGES, )<br><br>              Defendants.       ) | No. 08 cv 1265<br><br>Honorable Blanche Manning<br><br>Magistrate Judge Cox<br><br><br><br><br><br><br><br><br><br>Jury Trial Demanded |

---

## FIRST AMENDED COMPLAINT

---

NOW COMES Plaintiff, JANE DOE, by and through her attorneys, KATHLEEN

T. ZELLNER & ASSOCIATES, and complains of Defendants DENNING, SIGLER,

O'BRIEN, HARRIS, WINTERS, LUSTER, CAPETILLO, KINSELLA, JR.,

STROWMATT, DEMATTIA ,GROVE, HAIGE, MONAHAN, and HODGES and

1

pursuant to the Eighth Amendment and the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, as follows:

## JURISDICTION AND VENUE

1.    The jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), as these causes of action arise under the Eighth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983.

2.    Venue is proper in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391 (b)(1), for at least one defendant resides in this district.

## INTRODUCTION
### Factual Overview

3.    The plaintiff is a resident of the Northern District of Illinois. She grew up in an upper middle class home with strong family and religious values. She excelled in high school, graduating with a 4.0 GPA. At that time, the plaintiff also won a beauty pageant and was a member of both the debate team and key club.

4.    The plaintiff continued to excel in all areas of her life. She graduated with honors from one of the top universities in the United States and was accepted at several law schools. At that point, the greatest challenge for the plaintiff was coping with Chronic Obstructive Pulmonary Lung Disease [COPD] which was growing progressively worse.

5.      Plaintiff met and fell in love with a medical student. They were engaged to be married. Unbeknownst to Plaintiff, her fiancé had become involved with a friend in stealing money.

6.      After the scheme was detected by law enforcement, Plaintiff's fiancé persuaded her to take the blame and protect him. Her fiancé argued that she would get a light sentence, probably no more than a few years, and that she would be out in six months. The plan was that he would finish medical school and they would be married and live happily ever after. Plaintiff agreed and pled guilty. He abandoned her, and is now a practicing M.D.

7.      The plaintiff served sixty-one (61) days in the DuPage County Jail where her lung condition grew significantly worse. She was then charged in Cook County, given a three year sentence and shipped to Dwight Correctional Center.

8.      The plaintiff was assigned to the medical unit, C-17. She quickly learned that rehabilitation was the last thing on the minds of the male guards.

9.      The plaintiff discovered that holes had been drilled in the shower walls so that guards could select their prey. The plaintiff became one of the hunted. A group of seven male guards that functioned as a "rape squad" began a series of sexual assaults on her that spanned two hundred and sixteen (216) days until her release.

3

10.    The modus operandi was always the same. The plaintiff was taken to a restricted

area, put in a chokehold, turned away from her assailants, and sexually assaulted both

anally and vaginally. No condoms were used, thereby exposing her to the HIV virus.

Plaintiff's body was permanently damaged and her psyche destroyed.

11.    The plaintiff began a frantic effort to report the incidents to the prison's Internal

Affairs division. None of the dozens of written "slips" she sent to Internal Affairs were

ever addressed or acknowledged in any manner. Their silence was deafening.

12.    Plaintiff's certified letters to her attorney reporting these incidents were

intercepted and never reached him. All of her efforts to reach the media and report her

sexual assaults were blocked. All of her efforts to notify the warden about what was

happening to her were rebuffed.

13.    The more the plaintiff complained, the more she was punished. In April of 2006,

she was put in segregation. It turned out that the administration was segregating her from

those who could help her, not those who were attacking her. The sexual assaults

continued, even in segregation. Certain defendants threatened to extend Plaintiff's

sentence if she complained and to prevent her from seeing her family.

14.    At the point Plaintiff was released in mid-June of 2006, she had been sexually

assaulted in twenty-nine (29) separate incidents, some involving two or three different

guards. Plaintiff recorded many of the incidents in her Bible, but that was confiscated by the administration when she was put in segregation.

15.     Immediately upon her release Plaintiff sought medical attention and learned that she was fourteen (14) weeks pregnant. The child was conceived in April, around the time Plaintiff was put in segregation. On January 29, 2007, Plaintiff gave birth to this child. The baby was full term; in fact her ob-gyn determined that this baby was a week past the due date.

16.     In 2007, Plaintiff was contacted by the Illinois State Police regarding their criminal investigation surrounding the birth of her child. Plaintiff is cooperating fully in this investigation.

## Defendants

17.     Defendant Debbie Denning was employed by Illinois Department of Corrections ("IDOC"), as a Deputy Director, assigned to investigating grievances, at the time of the occurrences complained of herein.

18.     Defendant Mary Sigler was, at the time of the occurrences alleged herein, the Warden of Dwight Correctional Center. Her powers and responsibilities as Warden included, without limitation, responsibility for promulgating and/or enforcing rules, regulations, and procedures to ensure the safety and security of those in her custody, including Plaintiff, Jane Doe.

19.     Defendant Assistant Warden Doretta O'Brien was, at the time of the occurrences alleged herein, an Assistant Warden at Dwight Correctional Center. Her powers and duties as Assistant Warden included enforcing rules, regulations and procedures to ensure the safety and security of those in her custody, including Plaintiff Jane Doe.

20.     Defendant Assistant Warden Pamela Harris was, at the time of the occurrences alleged herein, an Assistant Warden at Dwight Correctional Center. Her powers and duties as Assistant Warden included enforcing rules, regulations and procedures to ensure the safety and security of those in her custody, including Plaintiff Jane Doe.

21.     Defendant Lieutenant Debbie Winters was a lieutenant employed by IDOC, assigned to Dwight Correctional Center at the time of the occurrences complained of herein.

22.     Defendant Lieutenant Luster was, at the time of the occurrences alleged herein, a correctional officer employed by the Illinois Department of Corrections ("IDOC").

23.     Defendant Lynn Hodge was at the time of the occurrences alleged herein, a correctional officer employed by IDOC.

6

24.    Defendant James Capetillo was a correctional officer employed by IDOC,
assigned to Dwight Correctional Center at the time of the occurrences complained of
herein.

25.    Defendant Donald Kinsella, Jr., was a correctional officer employed by IDOC,
assigned to Dwight Correctional Center at the time of the occurrences complained of
herein, and is a resident of the Northern District of Illinois.

26.    Defendant Michael Strowmatt was a correctional officer employed by IDOC,
assigned to Dwight Correctional Center at the time of the occurrences complained of
herein.

27.    Defendant James DeMattia was a correctional officer employed by IDOC,
assigned to Dwight Correctional Center at the time of the occurrences complained of
herein.

28.    Defendant Andrew Grove was a correctional officer employed by IDOC, assigned
to Dwight Correctional Center at the time of the occurrences complained of herein.

29.    Defendant Bruce Haige was a correctional officer employed by IDOC, assigned to
Dwight Correctional Center at the time of the occurrences complained of herein.

30.    Defendant Peter Monahan was a correctional officer employed by IDOC at the
time of the occurrences complained of herein.

31.     At all times material to this complaint, defendants were acting under color of state law, ordinance, and/or regulation.

32.     All of the defendants were, at the time of the occurrences alleged herein, employees of the Illinois Department of Corrections.  They engaged in the conduct complained of in the course of their employment with the Illinois Department of Corrections.  They are sued in their individual capacities.

**Reporting/Complaints: Actual Knowledge of Defendants**

33.     Plaintiff tendered over twenty (20) slips to Internal Affairs ("IA") reporting that she feared for her life because of the assaults.

34.     Plaintiff recorded each and every sexual assault and other incidents of her deprivation of rights from January, 2006, up through April, 2006, in her Bible.  Prior to April 19, 2006, Plaintiff's Bible was confiscated and never returned.

**Defendant Denning**

35.     Plaintiff also sent numerous letters to Debbie Denning, notifying her that Plaintiff was in danger as a result of the Correctional Officers.  Denning ignored these communications.

**Defendant Warden Sigler**

36.    Plaintiff wrote several letters to Warden Mary Sigler requesting to speak with her

about her situation. Plaintiff requested permission to speak with media outlets and

reporters. Defendant Sigler ignored these requests, but ordered Plaintiff's property

confiscated to obstruct Plaintiff's effort to notify outside sources of her plight. Plaintiff

continued to write to the administration requesting her Bibles. Those requests were

denied. Plaintiff's many letters to the media describing her sexual assaults were

intercepted.

37.    Desperate to get a response from Defendant Sigler Plaintiff sent a letter to a friend

outside the prison and he re-sent it certified to Sigler.

**Defendant Assistant Warden O'Brien**

38.    Plaintiff wrote letters to Assistant Warden O'Brien requesting her Bibles and

other documentation of her prior complaints from property.

39.    Assistant Warden O'Brien often walked through C-17. Plaintiff called out

requesting to speak with her and O'Brien ignored these requests. O'Brien acknowledged

to Plaintiff's counselor that she had received Plaintiff's letters but her property was being

held by IA. O'Brien told Plaintiff's counselor that all of Plaintiff's requests about the

media had to be answered by Warden Sigler. Sigler ignored these requests

**Defendant Assistant Warden Harris**

40.    Plaintiff informed Assistant Warden Harris of her situation and her efforts to

contact Warden Sigler. Assistant Warden Harris spoke with Plaintiff through her door at

C-17. Plaintiff explained that she had written three emergency grievances and not one

had been answered. She also stated her requests for her personal property had been

ignored. Plaintiff requested Defendant Harris' assistance. Harris did not respond to her

requests.


**Defendant Winters**

41.    Starting in January, 2006, up through June, 2006, Plaintiff reported her situation

to Internal Affairs. As a response to those reports, Defendant Winters informed Plaintiff

that if she was having sexual intercourse with any of the correctional officers, her

sentence would be extended by a minimum of one year. This is in direct violation of 720

ILCS 5/11-9.2, which makes sexual contact between Correctional Officers and inmates a

felony for the officer.


**Defendant Hodges**

42.    Approximately one month later Defendant Hodges told Plaintiff something to the

effect of, "you have to say this sex was consensual or you will not see your daughter

again."


**Defendant Capetillo**

43.    From January through June, 2006, Defendant engaged in repeated sexual and

physical assaults of Plaintiff.


10

**Defendant Kinsella, Jr.**

44.     From January through June, 2006, Defendant engaged in repeated sexual and physical assaults of Plaintiff.

**Defendant Strowmatt**

45.     From January through June, 2006, Defendant engaged in repeated sexual and physical assaults of Plaintiff.

**Defendant DeMattia**

46.     From January through June, 2006, Defendant engaged in repeated sexual and physical assaults of Plaintiff.

**Defendant Grove**

47.     From January through June, 2006, Defendant engaged in repeated sexual and physical assaults of Plaintiff.

**Defendant Haige**

48.     From January through June, 2006, Defendant engaged in repeated sexual and physical assaults of Plaintiff.

**Defendant Monahan**

49.     From January through June, 2006, Defendant engaged in repeated sexual and physical assaults of Plaintiff.

**History and Pattern**

50.    At some point in time between January and June, 2006, Plaintiff was told by another inmate that if a female inmate became impregnated by one of the correctional officers she was forced to have an abortion. These abortions would occur at a private doctor's office near the prison. Plaintiff had a specific discussion with an inmate immediately after her forced abortion about the circumstances of her abortion.

**Retaliation: Investigation of Plaintiff**

51.    As a result of Plaintiff's complaints of sexual assaults, the administration decided to investigate Plaintiff and blame her for these assaults.

52.    Defendants Winters told Plaintiff she would get "one year across the board" in segregation if she had <u>any</u> sexual contact with <u>any</u> of her officers (consensual or not). Specifically, Winters stated, "I know your medical condition is bad, and if you want to get the proper medical attention you need to do everything you can to protect your outdate or you could die in prison." Again, this is a clear violation of 720 ILCS 5/11-9.2

**Internal Affairs Investigation: Plaintiff Punished**

53.    During Plaintiff's time in investigative custody she was forced to wear leg irons and was shacked. She was not permitted to have visits from her daughter. She was forced to wear a jumper with no underwear that was secured by two pieces of Velcro.

54.     Additionally, while she was in segregation, the sexual assaults continued. Ms.
Doe was taken out of her cell in the middle of the night by Defendants Kinsella,
Capetillo, Strowmatt, DeMattia, Grove, Haige and Monahan.

55.     All avenues of reporting were both exhausted and closed. No effort was made by
the Administration to cooperate with Plaintiff or investigate her brutal assaults.

56.     These attacks occurred with the actual knowledge of the Defendant
Administrators.

**Post-Release Threats**

57.     At some time after Plaintiff's release and birth of her child, an investigator from
IDOC came to see her. At that visit it was confirmed by Plaintiff that the baby was full
term and conceived while Plaintiff was incarcerated.

58.     After that visit an email was sent to her, stating something to the effect of "if there
was a baby, she had better make it go away." Defendant Kinsella had obtained Plaintiff's
email address during her incarceration.

59.     As a result of Defendants' wrongful acts described herein, Plaintiff suffered and
continues to suffer permanent physical and psychological injuries, pain, suffering, severe
mental distress, anguish and humiliation.

## COUNT ONE

13

### EIGHTH AMENDMENT: Cruel and Unusual Punishment
(Defendants Kinsella, Strowmatt, Capetillo, DeMattia
Grove, Haige, and Monahan)

60.     Plaintiff realleges paragraphs 1 through 59 set forth above as if they were set forth
in full in this Count One.

61.     The actions of defendants Kinsella, Strowmatt, Capetillo, DeMattia, Groves,
Haige, and Monahan in beating, raping and otherwise horrifically abusing Plaintiff Jane
Doe from January, 2006, through June, 2006, constituted unnecessary and wanton
infliction of pain and were done maliciously and sadistically for the very purpose of
causing harm, and not in furtherance of any legitimate penological purpose, in violation
of Plaintiff's rights under the Eighth Amendment to be free from cruel and unusual
punishment, as made applicable to the states by the Fourteenth Amendment.

WHEREFORE, Plaintiff Jane Doe respectfully requests that the Court enter a judgment
in favor of Plaintiff and against Defendants Kinsella, Strowmatt, Capetillo, DeMattia
Grove, Haige, and Monahan for actual or compensatory damages. Additionally, because
the defendants acted maliciously, willfully, wantonly and/or in reckless disregard for
Plaintiff's constitutional rights, Plaintiff requests that she be awarded punitive damages,
and whatever additional relief this Court deems equitable and just.

### COUNT TWO

### EIGHTH AMENDMENT: (Deliberate Indifference to Need for Protection)
(Defendants Denning, Sigler, O'Brien, Harris, Winters, Luster, Capetillo, Kinsella, Jr.,
Strowmatt, DeMattia, Grove, Haige, John Doe IV, and Hodges)

14

62.   Plaintiff realleges paragraphs 1 through 59 set forth above as if they were set forth in full in this Count Two.

63.   Dwight Correctional Center houses exclusively female prisoners.

64.   Upon information and belief, Defendants Kinsella, Capetillo, Strowmatt, DeMattia, Grove, Haige and Monahan, were permitted to enter Plaintiff's cell and/or remove Plaintiff from her cell to take her to a restricted area and/or other areas at Dwight Correctional Center without a female officer present in the unit.

65.   National standards and international treaties and standards recognize the danger posed to female inmates who are guarded by male officers without a female officer present.

66.   There have been multiple instances within the Illinois Department of Corrections where male guards have sexually abused female inmates that they were supposed to be guarding.

67.   In 1996, the well known organization Human Rights Watch published an extensive study on sex abuse occurring in state prisons throughout the United States. One of the prisons highlighted was Dwight Correctional Center, in Dwight, Illinois, because of the recurring sexual abuse of female prisoners by male guards.

68.     Upon information and belief, defendants Denning, Sigler, Harris, O'Brien, Winters, Luster, and Hodges, had actual knowledge of this pattern of sexual abuse.

69.     Despite the established standards, the incidents of sexual abuse, and defendants' actual knowledge of this history of sexual abuse, defendants Denning, Sigler, Harris, O'Brien, Winters, Luster, and Hodges, failed to implement policies and procedures to protect female prisoners, including Plaintiff, who were housed at Dwight. The Dwight Correctional Center website mission statement proclaims that the administration's "foremost concern is inmate safety."

70.     Defendants' lack of regard for and conscious disregard for plaintiff Jane Doe's safety and security resulted in the recurring sexual abuse and physical assault of Plaintiff during her 216 days of incarceration.

71.     Defendants' failure to enact appropriate policies and procedures constituted willful and reckless conduct and/or deliberate indifference to her need for protection, and thus violated Plaintiff's rights under the Eighth Amendment to be free from cruel and unusual punishment as made applicable to the states by the Fourteenth Amendment.

72.     As a direct and proximate result of defendants Denning, Sigler, Harris, O'Brien, Winters, Luster, and Hodges, above-described conduct in violation of plaintiff's constitutional rights, Plaintiff suffered and continues to suffer physical and psychological injuries, pain, suffering, severe mental distress, anguish and humiliation.

16

WHEREFORE, Plaintiff Jane Doe respectfully requests that the Court enter a judgment in favor of Plaintiff and against defendants Denning, Sigler, Harris, O'Brien, Winters, Luster, and Hodges, for actual or compensatory damages. Additionally, because the defendant acted maliciously, willfully, wantonly and/or in reckless disregard for Plaintiff's constitutional rights, Plaintiff requests that she be awarded punitive damages, and whatever additional relief this Court deems equitable and just.

## COUNT THREE

### DUE PROCESS
(Defendants Winters and Hodges)

73.     Plaintiff realleges paragraphs 1 through 59 as set forth above as if they were set forth in full in this Count Three.

74.     Beginning on or about April, 2006, Defendants Winters and Hodges were assigned to investigate Plaintiff.

75.     Rather than perform an investigation designed to determine the identity of Plaintiff's assaulters and to gather evidence, Defendants Winters and Hodges conducted an investigation with the intent and with the effect of covering up the systemic pattern of abuse.

76.     As a direct and proximate result of Defendants Winters and Hodges' willful misconduct, the investigation of Plaintiff's abuse was tainted, and the case was closed.

As a further direct and proximate result, no action was taken to protect Plaintiff and no changes in policies and procedures were implemented to protect other female prisoners.

77.    As a further proximate result of the above described conduct of Defendants Winters and Hodges, Plaintiff suffered and continues to suffer physical and psychological injuries, pain, suffering, severe mental distress, anguish, humiliation, and loss of liberty.

WHEREFORE, Plaintiff Jane Doe respectfully requests that the Court enter a judgment in favor of Plaintiff and against Defendants Winters and Hodges for actual or compensatory damages.  Additionally, because the defendants acted maliciously, willfully, wantonly and/or in reckless disregard for Plaintiff's constitutional rights, Plaintiff requests that she be awarded punitive damages, and whatever additional relief this Court deems equitable and just.

## COUNT FOUR

### RETALIATION
((Defendants Denning, Sigler, O'Brien, Harris, Winters, Luster, Capetillo, Kinsella, Jr., Strowmatt, DeMattia, Grove, Haige, Monahan, and Hodges)

78.    Plaintiff realleges paragraphs 1 through 59 as set forth above as if they were set forth in full in this Count Four.

79.    Defendants ignored Plaintiff's cries for help, threatened Plaintiff if she came forward, and/or placed Plaintiff in investigative hold, in retaliation for her efforts to report her abuse.

18

80.    This is in direct violation of Plaintiff's constitutional rights and as a proximate

result of the above described conduct of Defendants, Plaintiff suffered and continues to

suffer physical and psychological injuries, pain, suffering, severe mental distress,

anguish, humiliation, and loss of liberty.

WHEREFORE, Plaintiff Jane Doe respectfully requests that the Court enter a judgment

in favor of plaintiff and against Defendants Denning, Sigler, O'Brien, Harris, Winters,

Luster, Capetillo, Kinsella, Jr., Strowmatt, Luster, DeMattia, Grove, Haige, Monahan,

and Hodges for actual or compensatory damages.   Additionally, because the defendants

acted maliciously, willfully, wantonly and/or in reckless disregard for Plaintiff's

constitutional rights, Plaintiff requests that she be awarded punitive damages.   Plaintiff

also requests that she be awarded costs and whatever additional relief this Court deems

equitable and just.

## COUNT FIVE

### CONSPIRACY PURSUANT TO 42 U.S.C. § 1983, EIGHTH AMENDMENT
(Defendants Denning, Sigler, O'Brien, Harris, Winters, Luster, Capetillo, Kinsella, Jr.,
Strowmatt, DeMattia, Grove, Haige, Monahan and Hodges)

81.    Plaintiff realleges paragraphs 1 through 59 as set forth above as if they were set

forth in full in this Count Five.

82.    Defendants Denning, Sigler, O'Brien, Harris, Winters, Luster, Capetillo,

Kinsella, Jr., Strowmatt, Luster, DeMattia, Grove, Haige, Monahan and Hodges, conspired to deprive plaintiff of her constitutional rights. As a direct and proximate result of defendants Denning, Sigler, Harris, O'Brien, Winters, Luster, and Hodges, above-described conduct in violation of Plaintiff's constitutional rights, Plaintiff suffered and continues to suffer physical and psychological injuries, pain, suffering, severe mental distress, anguish and humiliation.

WHEREFORE, Plaintiff Jane Doe respectfully requests that the Court enter a judgment in favor of Plaintiff and against defendants Denning, Sigler, O'Brien, Harris, Winters, Luster, Capetillo, Kinsella, Jr., Strowmatt, Luster, DeMattia, Grove, Haige, Monahan, and Hodges for actual or compensatory damages. Additionally, because the defendants acted maliciously, willfully, wantonly and/or in reckless disregard for Plaintiff's constitutional rights, Plaintiff requests that she be awarded punitive damages, and whatever additional relief this Court deems equitable and just.

Plaintiff hereby demands trial by jury.

Respectfully Submitted,

Kathleen T. Zellner
Attorney for Plaintiff

KATHLEEN T. ZELLNER & ASSOCIATES
2215 York Road
Suite 504
Oak Brook, Illinois 60523
(630)955-1212

.